IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOIS M. TOMBS, | : | |
| | : | |
| Plaintiff, | : | No. 3:19-cv-01047 |
| | : | |
| v. | : | (Saporito, M. J.) |
| | : | |
| ANDREW SAUL,[1] | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Lois M. Tombs's ("Tombs") claim for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §636(b) and

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)(action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, we will AFFIRM the decision of the Commissioner.

## I.    *Procedural Background*

Tombs is an adult individual born February 12, 1972. Tombs was forty-three years old at the time of her alleged onset date of disability – September 8, 2015.[2]

Tombs's age at the onset date makes her a "younger individual" under the Social Security Act. *See* 20 C.F.R. § 404.1563(d).

On October 21, 2015.  She protectively filed for disability insurance benefits under Title II of the Social Security Act, alleging her onset date of disability as March 16, 2015. (Tr. 15). Tombs reported that the following impairments prevent her from being able to work: anterior communicating artery aneurysm, intraventricular hemorrhage, subarachnoid hemorrhage, cerebral artery vasospasm, hemochromatosis, dizziness of unknown cause, iron metabolism, porphyrin metabolism, and sinus bradycardia, chronic. (Tr. 80).

---

[2] The original onset date of March 16, 2015, was amended at the administrative hearing to reflect the new onset date of September 8, 2015.  (Tr. 47)

Tombs's claims were initially denied on February 25, 2016. (Tr. 15). Thereafter, she filed a timely request for an administrative hearing on March 7, 2016, and her request was granted. Tombs appeared and testified at a video hearing in Jamestown, New York. The Administrative Law Judge ("ALJ") Mary Mattimore presided over the hearing in Buffalo, New York. (*Id.*). She was represented at the hearing by Matthew Frederick Nutting, a non-attorney. (*Id.*). An impartial vocational expert ("VE"), Timothy P. Janikowski appeared and testified during the hearing. (Tr. 15).

In a written decision dated June 14, 2018, the ALJ denied Tombs's application for benefits. (Tr. 12-33). Tombs sought further review of her claims by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied for review on March 21, 2019. (Tr. 1-8). She filed a timely complaint in this court on June 20, 2019, arguing that the ALJ's conclusions and findings of fact of the defendant are not supported by substantial evidence and are contrary to law and regulation. (Doc. 1, at 1).

On September 4, 2019, the Commissioner's answer was filed which maintained that the ALJ's decision was made in accordance with the law

and is supported by substantial evidence and that the findings of fact are supported by substantial evidence. (Doc. 8, at 3). This matter has been fully briefed by the parties and is ripe for decision. (Docs. 14, 16 and 17).

## II.  *Factual Background*

Tombs is an adult individual born February 12, 1972. She was forty-three years old at the time of the alleged onset of disability—September 8, 2015. (Tr. 15). At the time of the administrative hearing, Tombs was forty-six years old and resided in Coudersport, Pennsylvania, which is in the Middle District of Pennsylvania with her husband and son. (Tr. 49). Tombs has a high school education and previously worked as a custodian and nurses aid. (Tr. 91).

Tombs completed a high school education. (Tr. 51). Tombs stated that she has a valid driver's license and is able to drive, but usually only drives once a month, because she struggles to coordinate the accelerator and the brake.  (Tr. 50, 68). Tombs stated that she helps her son get off to school in the morning, then she cooks and cleans.  (Tr. 59). She stated she does laundry, and cleans the bathroom, but it takes her awhile because she gets tired. (Tr. 60).  She stated that when she gets tired, she stumbles.  (Tr. 60).  Tombs stated that she walks throughout the day,

sews, cross stitches, and watches television. She is able to read and understand the newspaper. She is able to garden and mow the lawn with a riding lawn mower. She is able to use the computer to pay bills, but she needs her husband to confirm that she has hit the "sent" button. She can play a memory game on the computer. (Tr. 62). She stated that she is able to perform household chores. (Tr. 63). She is able to help her son with schoolwork. (Tr. 212). She is able to care for her dogs, with the help of her husband and son. (Tr. 212). She is capable of handling her personal care. (Tr. 212). She stated she is able to prepare complete meals daily. (Tr. 213).

Tombs testified that she had an aneurysm in March 2015 which required hospitalization and underwent endovascular coiling. She stated that her mind goes blank and she forgets things. She stated that her right-hand grip sometimes lets go of what she is holding, and she is left-hand dominant. (Tr. 65). She complained of fatigue and that she becomes agitated easily. (Tr. 60, 67). In February 2018, Tombs had her coil checked and was told that she did not need to return for three years. (Tr. 55).

At the time of the administrative hearing, Tombs's medication

included Sertraline, which was later changed to Zoloft. She stated that it helps quite a bit with her concentration. (Tr. 58-59).

### III. *Legal Standards*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence

does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[3] that makes it impossible to do his or her previous work or any other substantial gainful activity[4] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

listed impairment;[5] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[6] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

---

[5] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[6] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

## *IV.  Discussion*

In her June 14, 2018, decision denying Tombs's claim, the ALJ evaluated Tombs's application for benefits at each step of the sequential process. At step one, the ALJ found that Tombs had not engaged in substantial gainful activity since September 8, 2015. (Tr. 17). At step two, the ALJ found that the following impairments were medically determinable and severe during the relevant period: post aneurysm and hemorrhage, right-sided paresthesia, obesity, osteoarthritis of the left knee, and neurocognitive disorder secondary to a brain aneurysm. (Tr. 17). At step three, the ALJ found that Tombs did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 18).

Between steps three and four, the ALJ assessed Tombs's RFC. The ALJ found that Tombs had the capacity to perform light work as defined in 20 C.F.R. §404.1567(b) with the following limitations:

> [Tombs] can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, crawl and push and/or pull bilaterally; [she] can never climb ladders, ropes, scaffolds, be exposed to hazardous machinery, unprotected heights or sharp objects; she cannot drive  motor vehicles or machinery of any kind; she can occasionally handle with her right non-dominant hand; [she]

> cannot perform a job requiring reading manuals or instructions; she can perform simple routine work and make simple workplace decisions, not at a production rate (assembly line) pace; she can tolerate minimal changes in work places processes and setting can maintain attention and concentration for 2 hour blocks of time; and [she] can tolerate occasional interaction with supervisors and only incidental contact or interaction with coworkers and the public.

(Tr. 20).

At step four, the ALJ found that Tombs was unable to perform her past relevant work as a supervisor janitor services worker. (Tr. 26).

At step five, the ALJ determined that based on Tombs's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Tombs could perform, including a mail clerk, cleaner housekeeping, and folder/laundry worker. (Tr. 27).

Tombs contends that the ALJ's assessment of her mental abilities and limitations are contradicted by the record. Further, she maintains that the ALJ erred by cherry-picking the least restrictive portions of the records. (Doc. 14, at 8).

> ***a. The ALJ properly evaluated the opinion evidence of record and afforded the proper weight to treating neurologist, Dr. Castro, and consultative examiners, Drs. Cole and Long.***

Tombs argues that the ALJ's assessment of mental abilities and

limitations are contradicted by the record. Further, she contends that the ALJ cherry-picked and credited the least restrictive portions of the record.

In evaluating the medical opinion evidence of record, "the ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris,* 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo,* 383 U.S. at 620. Moreover, "[I]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)(quoting *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992)).

It is the ALJ's exclusive responsibility as the fact-finder to evaluate medical opinions, including opinions from a treating physician, state agency consultants, and medical examiners, and decide whether they are supported by and consistent with the rest of the record. 20 C.F.R. § 404.1527(c),(e); *Richardson v. Perales,* 402 U.S. 389, 399 (1971). The ALJ is not required to accept a treating physician's opinion (or any opinion in

the record) where the opinion is not supported by clinical evidence, is internally inconsistent, or is not consistent with other evidence of record. 20 C.F.R. §404.1527(c)(2). Even though a treating physician's opinion may generally carry greater weight than a non-examining consultant, if "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may chose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Coleman v. Comm'r of Soc. Sec. Admin.*, 494 Fed. App'x 252, 254 (3d Cir. 2012) (*quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brown v. Astrue,* 649 F.3d 193, 196 n.2 (3d Cir. 2011)("The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."); *Griffin v. Comm'r of Soc. Sec.*, 305 Fed. App'x 886, 891 (3d Cir. 2009) (finding an ALJ is entitled to disregard a treating physician's opinion that is conclusory, unsupported by medical evidence, or internally inconsistent); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

In reaching his conclusion on Tombs's RFC, the ALJ weighed the testimony, diagnostic treatment, and opinion evidence. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (stating that "the

ALJ, not treating or examining physicians or State agency consultants, must make the ultimate disability and RFC determinations"); *see also* 20 C.F.R. §§ 404.1545(a)(3), 404.1546. "[T]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 Fed. App'x. 6, 11 (3d Cir. 2006) (the ALJ "is not required to seek a separate medical opinion when assessing the claimant's RFC.").

The responsibility of crafting the RFC assessment is solely on the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); *accord* Soc. Sec. Ruling 96-5p, 1996 WL 374183 (an individual's RFC is not a "medical issue regarding the nature and severity of an individual's impairment(s) but [is an] administrative finding").

Here, Tombs maintains that the opinion of Andrew Cole, Psy.D., a consultative examiner, placed greater limitations on Tombs than found by the ALJ, and no medical opinion of record contradicts Dr. Cole's opinion. (Doc. 14, at 9). In his medical source statement, Dr. Cole checked boxes indicating a marked limitation in Tombs's ability to make judgments on complex work-related decisions, in public interaction, and in responding appropriately to usual work situations and changes in a

routine work setting. (Tr. 1427-28). The ALJ restricted Tombs to simple, routine work and workplace decisions; to only occasional supervisor interaction and only incidental coworker and public interaction; and to minimal changes in workplace processes and setting. (Tr. 20). The ALJ gave "only some weight" to Dr. Cole's assessment and gave "more weight" to that of Tombs's treating neurologist, Dr. Castro. The ALJ explained that Dr. Castro observed that Tombs's cognition and memory were adequate, and Zoloft helped with her concentration and irritability problems. (Tr. 25). Tombs testified at the hearing that Zoloft "helps quite a bit" with her concentration. (Tr. 59). Further, the ALJ noted Dr. Cole observed Tombs's speech and thought processes to be fluent, clear, coherent, and goal directed. (*Id*.). The ALJ also noted that Dr. Cole observed that Tombs displayed intact attention and concentration with only mildly to moderately impaired memory. (*Id*.). The ALJ accorded "great weight" to the assessment of Dr. Castro as the treating neurologist and that, as of February 17, 2017, Dr. Castro saw no need for further care, observing that Dr. Castro's assessment was consistent with Tombs's underlying medical records. (*Id*.). The ALJ gave "significant weight" to the opinion of Dawn Long, Psy.D., a state agency psychological

consultant, who concluded that Tombs can understand, retain, and follow simple job instructions; perform simple, routine, repetitive work; make simple decisions; sustain a work routine without special supervision; maintain socially appropriate behavior; ask simple questions and accept instruction; interact appropriately with the public; get along with others in the workplace without distracting them; and exercise appropriate judgment in the workplace. (Tr. 90). The ALJ noted Dr. Long's program knowledge and her opinion's consistency with Tombs's activities of daily living. (Tr. 24). Thus, we find that the ALJ explained the basis of her decision, indicating which evidence she discounted and which she relied upon in weighing the medical assessments and opinions.

In addition, Tombs further asserts that if Dr. Cole's opinion was stale, the ALJ should have obtained an updated medical opinion. (Doc. 17, at 3).

In *Iturralde v. Berryhill*, No. 3:16-CV-01597, 2018 WL 1465273, at \*6 (M.D. Pa. Mar. 1, 2018), *report and recommendation adopted*, 2018 WL 1453181 (M.D. Pa. Mar. 23, 2018), a claimant asserted that the ALJ was required to contact the claimant's doctor if the ALJ had questions about the medical opinion. The Court held that "it is within the ALJ's

discretion to decide whether he needed explanation from [the doctor] in order to make his decision." *Id*; s*ee also Williams v. Astrue*, No. 10-CV-499S, 2012 WL 1114052, at *3 (W.D.N.Y. Mar. 30, 2012) (explaining that "[t]he duty to recontact arises only where an ALJ lacks sufficient evidence to evaluate opinion evidence or make a disability determination"). Additionally, the Court in *Iturralde* found "that the ALJ did not err in deciding not to contact [the doctor]" or in allocating little weight to the doctor's opinion because the ALJ "explained and supported his reasoning in according [the doctor's] opinion little weight with substantial evidence in the record."

In this case, the record and Tombs's testimony provided the ALJ sufficient evidence to make a disability determination and she adequately explained and provided support for her reasons for discounting the medical opinion evidence of Dr. Cole. Therefore, the court finds that the ALJ was not required to recontact Dr. Cole.

The Court finds that the ALJ's evaluation of the medical opinions of Drs. Castro, Cole, and Long was reached based upon a correct application of the relevant law and is supported by substantial evidence.

An appropriate Order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated:  September 21, 2020